ETHEL LOUISE HOBBS,                    CIVIL ACTION
      Appellant                    NO. CV08-1473-A

VERSUS

MICHAEL ASTRUE, COMMISSIONER           JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                    MAGISTRATE JUDGE JAMES D. KIRK
      Appellee

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Ethel Louise Hobbs ("Hobbs") filed an application for supplemental security income ("SSI") benefits on September 7, 2006, alleging a disability onset date of May 1, 2000 (Tr. p. 55),[1] due to arthritis in both knees, her fingers, and both shoulders, and high blood pressure (Tr. p. 66). That application was denied by the Social Security Administration (Tr. p. 37).

A de novo hearing was held before an administrative law judge ("ALJ") on March 17, 2008 (Tr. p. 18), at which Hobbs appeared with her attorney. The ALJ found that, although Hobbs suffers from "severe" hypertension, diabetes, and osteoarthritis of the knees, she has the residual functional capacity to perform the full range of light work and is not disabled, under Section 202.17 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 202.17.

Hobbs requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

---

[1] In her disability report, Hobbs alleged an onset date of January 3, 2006 (Tr. p. 67).

Hobbs next filed this appeal for judicial review of the Commissioner's final decision. On appeal, Hobbs contends the ALJ failed to properly evaluate the severity of all of her medically determined impairments, resulting in flawed findings at Steps 2 through 5 the evaluation process.

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a

preponderance. <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>Summary of Pertinent Facts</u>

At the time of her March 17, 2008, administrative hearing,

Hobbs was 49 years old (Tr. p. 21), had an eighth grade education (Tr. p. 23), and had work experience as a housekeeper in motels and as a cook in restaurants (Tr. pp. 23-24).

On June 2, 2006, Hobbs was examined at an emergency room for mild right knee pain caused by movement, with crepitance (Tr. p. 105). X-rays showed chondromalacia within the medial femoral tibial and patellofemoral joints consistent with osteoarthritis (Tr. p. 107). Hobbs was diagnosed with osteoarthritis and prescribed Etodolac (Tr. p. 106).

On June 16, 2006, Hobbs was examined by an emergency room physician for moderately severe left shoulder pain which was exacerbated by movement and local pressure (Tr. p. 101). X-rays of her left shoulder were normal with well maintained joint spaces (Tr. p. 104). Hobbs was prescribed Lortab, Prednisone, and Soma (Tr. p. 102). On June 22, 2006, Hobbs returned to the emergency room with complaints of left shoulder pain which had lasted a few weeks (Tr. p. 99). Hobbs was prescribed a Medrol dose pack and Tylenol (Tr. p. 100).

On July 3, 2007, Hobbs was diagnosed with plantar fasciitis in the right mid-foot, for which she was prescribed Mobic (a nonsteroidal inti-inflammatory) as needed (Tr. p. 133). Hobbs' blood pressure at that time was 106/54 (Tr. p. 133).

On July 12, 2007, Hobbs was diagnosed with hypertension (125/65) for which was continued on Procardia, Type 2 Diabetes Mellitus for which she was continued on Lantus, Glucophage, and Amaryl, and hyperlipidemia for which she was continued on Lipitor

(Tr. p. 132). Hobbs was also found to have Hepatitis C and was referred for tests.

On July 23, 2007, Hobbs had an eye examination and was diagnosed with congenital hypertrophy of the retinal pigment epithelium (CHRPE) (a pigmented intraocular lesion)[2] and cataracts, and her insulin dependent diabetes mellitus was noted.

On August 8, 2007, Hobbs weighed 227.3 pounds, was 5'6" tall, and her blood pressure was 98/59 (Tr. p. 128). Dr. Ramprasad Kandavar, an internist, found Hobbs suffered from hypertension for which she took Fosinopril and HCT2, diabetes mellitus for which she took Glucophage, Lantus, and Amaryl, degenerative joint disease/osteoarthritis of the knee joints, hepatitis C, and hyperlipidemia for which she took Lipitor (Tr. p. 128).

Also on August 8, 2007, Dr. Kandavar filled out an assessment of Hobbs' ability to perform work-related activities (Tr. pp. 206-209). Dr. Kandavar found Hobbs can lift/carry no more than ten pounds frequently, walk/stand less than 2 hours total in an eight hour day, is limited in her lower extremities for pushing and pulling due to osteoarthritis in both knees, and is limited in her ability to reach in any direction to doing so only frequently, but has not limitations in her ability to sit, climb, balance, kneel, crouch, crawl, stoop, see, hear, speak, and handle objects (except for reaching), and is not subject to any environmental limitations.

A liver biopsy was conducted by Dr. Kandavar on August 20,

_____

[2] See http://www.eyecancer.com/Patient/Condition.aspx?nID=52 &Category=Retinal+Tumors&Condition=Retinal+Pigment+Epithelial+(RP E)+Hypertrophy.

2007, which confirmed the diagnosis of Hepatitis C (Tr. pp. 143-144, 169-179, 204).

On August 28, 2007, Hobbs was treated in the emergency room for neck pain when she turned her head as well as shoulder pain (Tr. pp. 135-140); Hobbs had diffuse tenderness over her upper shoulders and behind her neck (Tr. p. 138). Hobbs claimed the neck and shoulder pain were caused by having to lie still on a table for a prolonged time for her liver biopsy (Tr. p. 138). Hobbs was prescribed Toradol, Flexeril, and Percocet (Tr. p. 136).

At her administrative hearing, Hobbs testified that she is left-handed, 5'6" tall, weighs about 223 pounds, and her weight goes up and down by five to six pounds (Tr. pp. 21-22). Hobbs further testified that she lives with her husband, who works, and she does not have any income of her own (Tr. p. 22). Hobbs testified that she completed the eighth grade, and she drives, reads, writes, and can do basic math and handle money (Tr. p. 23). Hobbs testified that she has worked as a housekeeper in motels and as a cook in restaurants (Tr. pp. 23-24).

Hobbs also testified that she has osteoarthritis in her knees and arthritis and spurs in her feet which prevent her from standing for long periods of time (Tr. p. 24). She uses heating pads and hot soaks for pain (Tr. p. 27). Hobbs testified she can stand for about twenty minutes (Tr. p. 24) and walk about half a block before having to stop and rest (Tr. p. 25). Hobbs testified that she occasionally has back problems if she sits too long (Tr. p. 25). Hobbs testified that she has numbness in her fingers and toes

that comes and goes (Tr. p. 32). Hobbs also testified that Hepatitis C causes her hands to swell up, dry, and crack; it hurts to use her hands when they are like that (Tr. pp. 32-33).

Hobbs testified that she has attended a diabetic class (Tr. p. 25) and she takes 20 mg. of insulin by injection every night, as well as glucophage and amaryl orally; her diabetes is controlled (Tr. p. 26). Hobbs said she is on a regular diet rather than a diabetes diet (Tr. p. 27).

Hobbs testified that she smokes about five cigarettes a day (tr. pp. 26-27). During the day, she does a little light housework such as laundry (Tr. p. 27). Hobbs testified that her husband cooks and does the grocery shopping (Tr. p. 28). Hobbs testified that she no longer babysits her grandchildren because of the pain in her knees (Tr. p. 29). Hobbs testified that she has about three bad days a week, when she cannot get out of bed due to pain in her knees (Tr. p. 29). Mobic and Tylenol help control the pain (Tr. p. 29). Hobbs testified that she does not have any hobbies or a computer (Tr. p. 30). Hobbs testified that she only drives when she has to, such as when she has to go to the doctor and her daughter cannot take her (Tr. p. 30). Hobbs does not go to church or any social organizations (Tr. pp. 30-31). Hobbs testified that she can lift up to twenty pounds and can pick up a gallon of milk (Tr. p. 33).

Hobbs testified that she loves working with children, but she cannot do that type of work, and that she could not do a sit-down job or a job with a sit-stand option because of problems with her

back (Tr. p. 31).

ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Hobbs (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Hobbs has severe impairments of hypertension, diabetes, and osteoarthritis of the

8

knees, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 11).

At Step No. 5 of the sequential process, the ALJ further found that Hobbs has the residual functional capacity to perform the full range of light work, and was a younger individual with a limited education, no past relevant work, and no transferable work skills (Tr. p. 13). The ALJ found that Section 202.17 of the Medical-Vocational Guidelines directed a finding of "not disabled," and concluded that Hobbs was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on March 27, 2008 (Tr. pp. 13-14).

<u>Law and Analysis</u>

<u>Evaluation of Impairments</u>

Hobbs contends the ALJ failed to properly evaluate all of her impairments, which resulted in flawed findings at Steps 2 through 5 of the evaluation process. Specifically, Hobs contends the ALJ erred in failing to mention or consider her obesity, synovitis, tenosynovitis of the left shoulder, hepatitis C, and plantar fasciitis in the right foot. Hobbs contends that the combination of her impairments produce pain and limitations in her lower extremities, back, and left shoulder, resulting in an inability to sit, stand, or walk for any length of time, and limiting her ability to reach, grasp, lift, and carry with her left (dominant) arm/shoulder. Hobbs also argues the ALJ erred in rejecting the opinion of a treating physician when determining her residual

functional capacity.

1.

Hobbs contends the ALJ erred in failing to mention and consider her obesity. Obesity should be considered in combination with other impairments in making the residual functional capacity determination and in discussing the claimant's ability to perform sustained work activities. <u>Beck v. Barnhart</u>, 205 Fed.Appx. 207, 212 (5th Cir. 2006), citing SSR 02-1p.

Social Security Ruling 02-1p, "Evaluation of Obesity," states,

"1. What Is Obesity?

"Obesity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral).

"In one sense, the cause of obesity is simply that the energy (food) taken in exceeds the energy expended by the individual's body. However, the influences on intake, the influences on expenditure, the metabolic processes in between, and the overall genetic controls are complex and not well understood.

"The National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998). These guidelines classify overweight and obesity in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'

"The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss."

The National Institutes of Health explain the calculation of the body mass index as follows:

> "Your BMI estimates how much you should weigh, based on your height. Here are the steps to calculate it:
>     * Multiply your weight in pounds by 703.
>     * Divide that answer by your height in inches.
>     * Divide that answer by your height in inches again.
> "For example, a woman who weighs 270 pounds and is 68 inches tall has a BMI of 41.0.
> "Use the chart below to see what category your BMI falls into, and whether you need to be concerned about your weight.
>
>     BMI            CATEGORY
>     Below 18.5     Underweight
>     18.5 - 24.9    Healthy
>     25.0 - 29.9    Overweight
>     30.0 - 39.9    Obese
>     Over 40        Morbidly obese"

See the Body Mass Index calculator at http://www.nlm.nih.gov/medlineplus/ency/article/007196.htm.

According to Hobbs' weight of 227.3 pounds and height of 5'6" as reflected in her medical records, Hobbs' BMI is 36.7, which is Level II obesity. Therefore, according to Social Security Ruling 02-1p, the ALJ should have recognized and considered the impact of Hobbs' obesity on her ability to work.

Obesity should be considered in combination with other impairments in making the residual functional capacity determination and in discussing the claimant's ability to perform sustained work activities. Beck v. Barnhart, 205 Fed.Appx. 207, 212 (5th Cir. 2006), citing SSR 02-1p. Obesity is not a listed impairment, but it can reduce an individual's occupational base for work activity in combination with other ailments. Beck, 205 Fed.Appx. at 211, citing S.S.R. 02-1p.

In the case at bar, the ALJ did not mention Hobbs' obesity or

discuss the impact of her obesity on her ability to work.  That was an error on the part of the ALJ.  However, Hobbs' impairments of hypertension, diabetes, and osteoarthritis of the knees, all of which are caused or aggravated by her obesity were considered in determining Hobbs' residual functional capacity.  Therefore, the ALJ did, in effect, consider the impact of Hobbs' obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity.

Therefore, although the ALJ erred in failing to specifically discuss Hobbs' obesity when making the residual functional capacity determination, Hobbs has not shown how she was prejudiced by that failure since the effects of her obesity were considered.  This issue is meritless.

2.

Hobbs next contends that her synovitis[3] and tenosynovitis[4] of the left shoulder, her plantar fasciitis, and her Hepatitis C were also not considered by the ALJ.

The ALJ did not find that Hobbs' synovitis and tenosynovitis were severe impairments.  An impairment can be considered as not

---

[3] Synovitis is the inflammation of a synovial membrane usually with pain and swelling of the joint.  MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Synovitis, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[4] Tenosynovitis is the inflammation of a tendon sheath. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Tenosynovitis*, available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

"severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. <u>Estran v. Heckler</u>, 745 F. 2d 340, 341 (5th Cir. 1984). See also, <u>Anthony v. Sullivan</u>, 954 F.2d 289 (5th Cir. 1992). The Regulations define a non-severe impairment as an impairment or combination of impairments that do not significantly limit a claimant's physical or mental ability to do basic work activities. "Basic work activities" means physical functions such as walking, standing, sitting lifting, pushing, pulling, reaching, carrying or handling, capacities for seeing, hearing, and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521, 20 C.F.R. § 416.921.

There are only two complaints concerning shoulder pain in the record, both in June 2006. Apparently that Hobbs' left shoulder problems were resolved with treatment in less than twelve months. Therefore, the ALJ did not err in not finding synovitis and tenosynovitis were severe impairments.

Likewise, the medical records show Hobbs only complained of plantar fasciitis[5] once in July 2007; apparently that condition,

---

[5] Plantar fasciitis is an inflammation involving the plantar fascia especially in the area of its attachment to the calcaneus and causing pain under the heel in walking and running. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Plantar Fasciitis*, available at*

and the pain from that condition, also resolved in less than twelve months. Again, the ALJ did not err in not finding Hobbs' plantar fasciitis was not severe impairment.

Hobbs contends the ALJ erred in not finding her Hepatitis C was a severe impairment. Hepatitis C is an ongoing disease, which the medical records reflect Hobbs took medication for and was evaluated for on a continuing basis. The ALJ noted that Hobbs has Hepatitis C but did not find it was a severe impairment. The medical records do not indicate that Hobbs' Hepatitis C has progressed to the point that it affects her ability to perform basic work activities. Therefore, the ALJ did not err in failing to find Hobbs' Hepatitis C is a severe impairment. However, if Hobbs' Hepatitis C worsens and starts to affect her ability to work, she may file a new claim. The subsequent deterioration of a claimant's previously non-disabling condition, after the date of the Commissioner's decision, may form the basis of a new claim. <u>Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985).

3.

Next, Hobbs contends that the combination of her impairments produce pain and limitations in her lower extremities, back, and left shoulder, resulting in an inability to sit, stand, or walk for any length of time, and limiting her ability to reach, grasp, lift, and carry with her left (dominant) arm/shoulder. However, the only pain Hobbs was suffered from on a continuing basis was that caused

---

http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

by osteoarthritis in her knees, and there were very few complaints of and treatment for knee pain in the record. The ALJ found her osteoarthritis was a severe impairment and considered it in determining Hobbs' residual functional capacity.

Therefore, the ALJ did not err in failing to consider Hobbs' pain from synovitis, tenosynovitis, plantar fasciitis, and Hepatitis C in determining Hobbs' residual functional capacity, and did not err in considering her combined impairments in determining her residual functional capacity.

Residual Functional Capacity Assessment

Finally, Hobbs contends the ALJ erred in rejecting the residual functional capacity assessment of Hobbs' treating physician, Dr. Kandavar (Tr. pp. 206-209), and accepting instead the assessment of a non-physician claims examiner from Disability Determination Services (Tr. pp. 111-118).

For cases at the administrative law judge hearing level, the ALJ has the responsibility for deciding a claimant's residual functional capacity. 20 C.F.R. § 404.1546, § 416.946. The ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. When making the RFC determination an ALJ must consider objective medical facts, diagnoses, medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. § 404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p. Myers v. Apfel, 238 F.3d

617, 620 (5th Cir. 2001).

Generally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician. <u>Carry v. Heckler</u>, 750 F.2d 479, 484 (5th Cir. 1985). However, the weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. <u>Elzy v. Railroad Retirement Board</u>, 782 F.2d 1223, 1225 (5th Cir. 1986); <u>Jones v. Heckler</u>, 702 F.2d 616, 621 (5th Cir. 1983). An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981).

ALJ's have been warned by the courts against "playing doctor" and making their own independent medical assessments. Common sense can mislead; lay intuitions about medical phenomena are often wrong. <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002). An ALJ does not have the medical expertise to substitute his opinion as to the nature of a claimant's medical complaints for the supported and unrefuted diagnosis of the treating physician, particularly one who is a specialist. See <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002); <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990), cert. den., 502 U.S. 901, 112 S.Ct. 278 (1991).

In the case at bar, the ALJ concluded without discussion that Hobbs has the residual functional capacity to perform the full range of light work, and based that conclusion on the findings of a non-physician claims examiner (Tr. pp. 12, 111-118). The ALJ

stated that he rejected Dr. Kandavar's findings as to Hobbs' residual functional capacity because Dr. Kandavar is an internist, so he did not have the expertise to make findings as to the limitations caused by Hobbs' orthopedic impairment, osteoarthritis in the knees (Tr. pp. 12-13).

It is obvious that the ALJ erred in accepting the opinion of a non-physician over that of a treating physician. Moreover, if Dr. Kandavar, as an internist, does not have the expertise to evaluate Hobbs' orthopedic impairment, a non-physician has even less expertise. The ALJ's stated rationale for rejecting Dr. Kandavar's assessment and finding Hobbs can perform the full range of light work is illogical.

Therefore, substantial evidence does not support the ALJ's conclusion that Hobbs can perform the full range of light work.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Hobbs to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Hobbs can perform, given her true impairments. Therefore, Hobbs' case should be remanded to the Commissioner for further proceedings in accordance with the views expressed herein.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Hobbs' case

be REMANDED to the Commissioner for further proceedings in accordance with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 11th day of May, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE